[Civ. No. 25864. Second Dist., Div. Two. Aug. 10, 1962.]

ALBERT TEITELBAUM, Plaintiff and Appellant, v. RAY W. BORDERS et al., Defendants and Respondents.

Leland, Plattner & Kalik and Horace L. Kalik for Plaintiff and Appellant.

Paul Caruso, Augustus Castro, Sheppard, Mullin, Richter & Hampton, Iverson & Hogoboom and Landon Morris for Defendants and Respondents.

HERNDON, J.—This is an appeal from orders sustaining defendants' demurrers to plaintiff's second amended complaint without leave to amend and granting defendants' mo-

tions to strike the complaint as amended, and from the judgment dismissing the action.

The defendants in this action include (1) a group of insurance companies, which together subscribed to a certain insurance certificate of Underwriters at Lloyd's, American Home Insurance Company, Aetna Insurance Company and Caledonian Insurance Company, which companies are hereinafter referred to as "the defendant insurance companies"; (2) the National Board of Fire Underwriters, an association of companies hereinafter referred to as "the defendant Board"; (3) Harold Andersen, the local agent and manager of the Board; (4) Ray W. Borders, a police officer and alleged agent of the Board; and (5) Andrew Marudas, Claude Wilson, Carl Gaebel, and Clifford Vanderwyst, also alleged agents of the Board.

Said second amended complaint seeks to recover damages against the several defendants in four counts. The first count attempts to allege a cause of action for violation of sections 16700 et seq., of the Business and Professions Code (The Cartwright Act); the second, a cause of action for fraud resulting from the actions of defendant Borders in his alleged dual capacity as a police officer and as agent of defendant Board; the third, a cause of action for malicious interference with plaintiff's contractual and business relations on the part of the individual defendants; and the fourth, a cause of action for conspiracy to cheat and defraud plaintiff.

The complaint attempts to avoid the bar of the statute of limitations by affirmatively pleading that plaintiff did not discover, and was unable to discover, the fraudulent nature of the wrongful acts complained of until February 1960.

Plaintiff concedes that the issues here to be determined are whether he has stated, or could by amendment state, a good cause of action against any of the defendants, and whether his action is necessarily barred by limitations. We have concluded that a reading of the pleadings, in the light of facts of which the court may properly take judicial notice, requires a ruling that the action is barred so that a determination of the other contentions urged in support of the trial court's actions is not required. The original complaint was filed August 23, 1960.

A full recitation of the allegations contained in each count of plaintiff's complaint is unnecessary, since the basic facts alleged are very similar, if not identical, in each count. They may be fairly summarized to the effect that the defendant in-

surance companies, the defendant Board, and the individual defendants, in various combinations, injured plaintiff in his business by rejecting, or causing to be rejected, his insurance claims for loss of merchandise, by cancelling, or causing to be canceled, his existing insurance policies, and by refusing, or causing the refusal, of issuance of new policies of the type required by plaintiff in order to continue his operations in the fur business.

The overt wrongful acts complained of all center around the acts of the individual defendants in their personal capacities, or as alleged agents of the other defendants, in fraudulently causing plaintiff's arrest and conviction in the case of *People* v. *Teitelbaum,* 163 Cal.App.2d 184 [328 P.2d 157]. These alleged overt acts, in summary, constituted coercion exerted by defendants Borders and Marudas upon defendants Wilson and Vanderwyst to the end that the latter made false confessions and gave perjured testimony regarding the complicity of themselves and plaintiff in a robbery perpetrated in 1955; the furnishing of false information by the defendant Gaebel to a member of the Los Angeles County Grand Jury to the effect that plaintiff and plaintiff's father had in the past presented ''phony insurance claims'' and perpetrated false robberies; the direction of the Beverly Hills Police Department's investigation of the 1955 robbery by Marudas rather than by Borders; and the filing by defendant Borders on August 20, 1956, of a report to the probation department following plaintiff's conviction in which plaintiff and plaintiff's father were alleged to have been involved in false robberies in the past.

It is not alleged that any affirmative wrongful act was committed by any defendant subsequent to October 1956 when plaintiff asserts that he was forced to liquidate his business.

 The plaintiff would first seek to avoid the effect of any limiting statute by the assertion that the fundamental wrong complained of is the creation of a situation in which he is unable to procure insurance required in the operation of his business, and that this is a continuing wrong. Such is not the law. As stated in *Agnew* v. *Parks,* 172 Cal.App.2d 756 [343 P.2d 118], at page 765, ''Although the pleading asserts that the conspiracy was entered into May 4, 1945, and continued to November 24, 1948, it fails to allege any specific act as having occurred on the latter date. There existing no cause of action for conspiracy in and of itself, the statute of limitations is determined by the nature of the action in which the

conspiracy is alleged. The alleged conduct preventing certain doctors from testifying occurring on July 10, 1946, and prior to the second trial (November 29, 1948) consisted of separate, distinct and completed acts, and a violation of personal rights subject to the one-year limitation [citations], which period commenced to run from the time of their commission [citations]."

In *Steiner* v. *20th Century-Fox Film Corp.*, 232 F.2d 190, the appellant advanced a contention very similar to plaintiff's herein. In disposing of it, the court said, at page 194: "Appellant contends that where damages are in their nature continuing the statute runs from the date of the last injury. Under this view the statute of limitations would not run until all injury to a claimant had ceased. We must disagree. In a civil conspiracy, the statute of limitations runs from the commission of the last overt act alleged to have caused damage." Further, on page 195: "In a continuing conspiracy causing continuing damage without further overt acts, the statute of limitations runs, as we have noted, from the time the blow which caused the damage was struck. Any further internal injury affects the problem of how much should be claimed in damages, not the problem of when the statute of limitations commences to run. Otherwise, in a continuing conspiracy, the cause of action of an injured party would never fully develop, nor would there be any limitation upon the right of action, and the beneficent purpose of the statute to delimit the right to sue would be defeated."

Whatever the nature of the wrong done to plaintiff, it was whole and complete not later than October 1956 when plaintiff closed his business, and the limiting statutes commenced to run not later than that date.

Plaintiff next argues that if any limiting statute applies, it is section 338, subdivision (4), Code of Civil Procedure, since, if fraud enters into a cause of action, regardless of the form in which it is pleaded, the injured party has three years from the date of his *discovery* thereof to commence his action. (*Lightner Mining Co.* v. *Lane*, 161 Cal. 689, 702 [120 P. 771, Ann.Cas. 1913C 1093].)

Assuming for the sake of argument that any count of plaintiff's complaint sounds in fraud, all fraudulent acts were admittedly committed prior to October 1956. Therefore, the sole issue is whether at that time there had been discovery by plaintiff of the facts constituting the fraud. This does not require that the aggrieved party know the exact manner in

which his injury was effected, nor the identities of all parties who may have played a role therein. (*Bainbridge* v. *Stoner*, 16 Cal.2d 423, 430 [106 P.2d 423]; cf. *Staples* v. *Zoph*, 9 Cal. App.2d 369, 370 [49 P.2d 1131].)

In *Bainbridge* v. *Stoner, supra*, at page 430, the court stated: ''Under ordinary circumstances, a plaintiff may not invoke the aid of a court of equity for relief against fraud after the expiration of the period of limitation for such an action unless he affirmatively pleads that he did not discover the facts constituting the fraud until within three years prior to the date he filed his complaint. (Sec. 338, Code Civ. Proc.)

The word discovery as used in the statute is not synonymous with knowledge. And the court must determine, as a matter of law, when, under the facts pleaded, there was a discovery by the plaintiff, in the legal sense of that term.

Consequently, an averment of lack of knowledge within the statutory period is not sufficient; a plaintiff must also show that he had no means of knowledge or notice which followed by inquiry would have shown the circumstances upon which the cause of action is founded. Moreover, he must also show when and how the facts concerning the fraud became known to him. [Citations.]''

From a reading of plaintiff's complaint, it is apparent that he knew of the cancellation of his insurance and the rejection of his claims in January 1956 and of his arrest and subsequent conviction in June 1956; hence, he must have known that he would be uninsurable as a result thereof.

Moreover, plaintiff expressly concedes in his opening brief: ''Concededly, the Plaintiff knew that Wilson and Vanderwyst had lied and perjured themselves to the Grand Jury. The Plaintiff was entitled to and did receive the Grand Jury transcript of the proceedings against him shortly after they were conducted in March, 1956. That transcript contains Wilson's admission of perjury to the Grand Jury! In that transcript, Wilson admitted under oath that Police Officer Borders coerced him into perjuring himself. Plaintiff was aware of Defendant Border's deliberate falsehoods in the 1956 probation report, and was aware of Wilson's false confession. He was aware that Borders dictated it for Wilson, knowing it to be false, and delivered it to Defendant Andersen 'in escrow' in 1956. . . .''

Furthermore, plaintiff's complaint in the instant case makes specific reference to the prior criminal action by name and case number; and it appears from the record before us

that plaintiff, by stipulation and in his points and authorities filed in the trial court, invited inspection of the files in said criminal action and in two other prior civil cases involving the same subject matter. Under these circumstances it was entirely proper for the trial court to take judicial notice of the records and files in said cases. (*Legg* v. *Mutual Benefit Health & Acc. Assn.*, 184 Cal.App.2d 482, 487-488 [7 Cal. Rptr. 595]; *Wunch* v. *Wunch*, 184 Cal.App.2d 527, 530 [7 Cal.Rptr. 551]; and *Taliaferro* v. *Taliaferro*, 178 Cal.App.2d 140, 141-142 [2 Cal.Rptr. 716].)

Plaintiff in his briefs filed in this court concedes the correctness of the rule just stated and argues the effect of various matters appearing in the record of the criminal case. Particularly damaging to his position here is an affidavit filed by him in said criminal action on June 7, 1956, in support of his application for a subpoena duces tecum in which plaintiff swore as follows: "Said document is further material to show that said insurance companies, or some of them, through said Harold E. Andersen as their agent, federated and conspired with said Claude W. Wilson, and/or others, to cause and instigate the indictment and prosecution of deponent in order to defeat or attempt to defeat the rightful claim of Teitelbaum Furs, Inc., a California corporation, Teitelbaum Furs, Inc., a New York Corporation, and Teitelbaum Furs of Palm Springs, Inc., a corporation, under the policies of insurance issued by said insurance companies covering the losses which resulted to the corporations of which I was and am president, from said robbery."

As pointed out in *Turman* v. *Holmes*, 29 Cal.App.2d 198, 206 [84 P.2d 225]: "Since appellant has within his power the means of discovery of the alleged fraud, he must be deemed to have had actual knowledge thereof more than three years prior to the filing of this action. (*Lady Washington C. Co.* v. *Wood*, 113 Cal. 482, 487 [45 P. 809].)" The plaintiff in the present action not only had the means of discovery, but had actual knowledge of the alleged fraud and the alleged conspiracy against him.

The only claim made by plaintiff as to discovery of new information within three years preceding the filing of this action is the assertion that in the course of certain civil service hearings in February and March 1960 defendant Borders admitted his and defendant Marudas' agency relationship with the defendant Board. However, in view of plaintiff's admitted knowledge of defendant Border's alleged dictation of a false

confession by defendant Wilson, and of its delivery to defendant Andersen, the known agent of the defendant Board and the known employer of the defendant Gaebel, such "new information" could only have confirmed plaintiff's belief set forth in his affidavit of June 1956 that a conspiracy was being carried on to defraud him.

Plaintiff finally alleges that defendants are estopped to assert the statute of limitations due to their fraudulent concealment of material facts giving rise to his cause of action. Unfortunately for this contention, plaintiff's complaint makes it entirely clear that no material fact was unknown to him, nor was any such fact of a type that could be concealed from him. The only "concealment" seems to have been an alleged failure on the part of the defendants to "confess" the details of their exact personal relationships. Estoppel cannot be predicated upon such a failure to disclose what would be at best evidentiary material helpful to plaintiff in establishing wrongs already well known to him. (*Wight* v. *Hubbard*, 111 Cal.App.2d 606, 609 [245 P.2d 64].)

The judgment appealed from is affirmed. The purported appeals from the orders sustaining demurrers and granting motions to strike are dismissed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied September 7, 1962, and appellant's petition for a hearing by the Supreme Court was denied October 2, 1962.