On Application for Rehearing

MURDOCK, Justice.
The opinion of January 11, 2013, is withdrawn, and the following is substituted therefor.
This Court granted Carl Weaver permission to appeal the Coosa Circuit Court’s denial of his motion to dismiss the complaint filed against him by Roger D. Firestone. See Rule 5, Ala. R.App. P. Because the trial court correctly concluded that Firestone’s action might not be time-barred and thus was not due to be dismissed at this stage of the proceeding on that ground, we affirm the trial court’s order denying Weaver’s motion to dismiss.

I. Facts and Procedural History

In August 2010, Charles Richard Tooley, L.C. Collins, Jr., and Mickie Wayne Collins pleaded guilty to the attempted murder of Firestone in May 1995. A few days after the guilty pleas, Firestone filed a complaint against Weaver; Tooley; Collins, Jr.; Collins; and fictitiously named parties A-M. According to the allegations of the complaint:
“8. In the spring of 1995, Weaver entered into a conspiracy with Tooley, Collins, Jr. and ... Collins and A through M. The conspirators agreed to conceal their relationship and their involvement in the said conspiracy. Thereafter, each of the conspirators concealed their involvement through fraud and deception.
“9. At approximately 5:00 a.m. on May 16, 1995, at a point off of Coosa County Road No. 55 approximately two miles southwest of Unity Crossroads, west of Weogufka in Coosa County, Alabama, said conspiracy was put into effect when Tooley, Collins, Jr., M. Collins, and A through M came to a cabin and camper located at said place and attacked [Firestone, Charles T. Amber-son, Jr., and Darrell Thomas Coleman],
“10. The said Tooley, Collins, Jr. and ... Collins bound the hands and ankles of the said Firestone, Amberson, and Coleman with electrical wire, and then bound their hands and ankles with duct tape, sprayed their entire bodies and them surroundings in said cabin with lantern fuel and set them on fire.
“11. Amberson and Coleman subsequently died as a result of the burns suffered in said fire.
“12. After being set on fire, Firestone exited the cabin by jumping *955 through a glass window, but was recaptured by the Defendants. He was then further assaulted and battered by the Defendants by being hit in the face and head several times with the butt of a shotgun, dragged back to the cabin, set on fire again, covered with plywood, and left for dead.
“13. As a proximate result of said tortious acts of the Defendants, [Firestone] was caused to suffer the following injuries and damages: the great majority of his body suffered second and third-degree burns, requiring skin grafts to approximately 75% of his body, covering, but not limited to his chest, abdomen, arms, legs, back, penis and feet; one or both of his hands and one or both of his legs were permanently injured; his whole body was permanently injured; he was caused to be hospitalized at Chil-ton Medical Center and at University of Alabama Hospitals in Birmingham for approximately two and one-half months to treat his injuries; he incurred over $1,000,000.00 in medical bills to treat his injuries, and he will be caused to incur medical bills for treatment for the remainder of his life; he suffered immense pain as a result of said burns and has suffered pain from May 16, 1995, to the present as a result of said injuries and will suffer such pain for the remainder of his life; he is permanently disabled and cannot work; he suffered distress and discord in his marriage, which culminated in divorce and separation from his children; and he was caused to suffer extreme mental anguish as a result of said injuries and he will be caused to suffer such for the remainder of his life.
“14. Defendants, by fraud and deception, concealed from [Firestone] the identity of those who had battered him and set him on fire on May 16,1995, and who had hired them to do so. [Firestone] did not discover who had physically perpetrated said acts until November 6, 2009. [Firestone] then learned that the Defendants Tooley, ... Collins and Collins, Jr. had physically caused him to be set on fire and to suffer said injuries. From the time of the fire and assault until November 6, 2009, ... Firestone made diligent efforts to learn who had assaulted him and why he had been assaulted, to no avail.
[[Image here]]
“17.... Defendant Weaver organized and financed the conspiracy. The other Defendants agreed to carry out the object and purpose of the conspiracy, to maim, torture and kill [Firestone]. Defendants agreed that secrecy was an integral part of their agreement and conspiracy. Defendants agreed to take all possible steps and precautions to maintain the said secrecy and to shield from all others the identity of the conspirators. Defendants agreed that even if some of them were arrested and charged with the conspiracy or carrying out its objects and purposes, they would continue to keep secret the fact of the conspiracy and the identity of the conspirators.”
The complaint included claims that Weaver, Tooley, Collins, Jr., and Collins had conspired to “maim, torture, and kill” Firestone, had committed the tort of outrage, had committed an assault and battery on his person, and had attempted to murder him.
Also, recognizing that a question might exist as to whether his action was barred by the pertinent statutes of limitations, Firestone averred in his complaint:
“On August 9, 2010, Tooley, ... Collins, and Collins, Jr. pleaded guilty to attempted murder of [Firestone]. It was not until this date that [Firestone] discovered the identity of the [individuals] who had attacked him because of the fraudulent concealment of the con *956 spiracy and the identity of the conspirators. [Firestone] avers that despite diligent efforts, he could not discover the identity of his attackers before August 9, 2010. [Firestone] has since August 9, 2010, further discovered the identity of Defendant [Carl] Weaver and his role in this matter. [Firestone] avers that none of the acts of [Weaver, Tooley, M. Collins, and Collins, Jr.,] are barred by the statute of limitations. [Firestone] avers that this action is brought against [these individuals] within the time allowed by Alabama law for bringing an action following discovery of facts which have been fraudulently concealed by defendants. [Firestone] further avers that any otherwise applicable statute of limitations has been equitably tolled until the reasonable efforts of [Firestone] to discover the identity of [these individuals] and that [Firestone] has brought this action in the time allowed by law following such discovery. [Firestone] further avers that no statute of limitations is applicable to this case under Alabama law because it is an action for damages for maiming and attempted murder with the relevant facts of the identity of [these individuals] deliberately concealed as a part of a conspiracy by [these individuals] to maim and murder [Firestone] and others.'”
(Emphasis added.)[1]
Weaver filed a motion to dismiss Firestone’s complaint pursuant to Rule 12(b)(6), Ala. R. Civ. R, and §§ 6-2-34 and 6-2-38, Ala.Code 1975. In his motion, Weaver argued that Firestone’s claims were barred by the applicable statutes of limitations and that no tolling provision precluded the application of the time-bars. Specifically, Weaver argued that neither the discovery rule of § 6-2-3, Ala.Code 1975, nor the doctrine of equitable tolling was applicable to Firestone’s claims.
After conducting a hearing on Weaver’s motion to dismiss, the trial court denied the motion. The trial court specifically noted that Firestone “alleges in the complaint that he made diligent efforts to discover the identity of his assailants, but could not do so until they pleaded guilty and implicated Weaver.”[2]

ÍI. Standard of Review

“The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App.1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671
*957 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala.1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).’
“Nance v. Matthews, 622 So.2d 297; 299 (Ala.1993).”
DGB, LLC v. Hinds, 55 So.3d 218, 223 (Ala.2010). “ ‘Inasmuch as the issue before us is whether the trial court correctly denied a Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss, “[t]his Court must accept the allegations of the complaint as true.” ’ ” Ex parte Walker 97 So.3d 747, 749 (Ala.2012) (quoting Ex parte Alabama Department of Youth Servs., 880 So.2d 393, 397 (Ala.2003)).

III. Analysis

The petition for permission to appeal included a certification by the trial court of the following controlling question of law:
“In the absence of a possible confidential or other special relationship between the parties, can either the discovery rule of Ala.Code 1975, § 6-2-3, or the doctrine of equitable tolling be applied to extend the Plaintiffs time to file its lawsuit against the Defendant, when Plaintiff alleges in its personal injury complaint that: 1) the Defendant has committed a crime wherein the Plaintiff is the victim, 2) the identity of the Defendant was unknown to Plaintiff and was not discoverable within the time of the running of the statute of limitations, and 3) there was a fraudulent concealment by Defendant of Defendant’s identity as the perpetrator of the crime.”

A. Section 6-2-3, Ala.Code 1975

Section 6-2-3, Ala.Code 1975, commonly known as Alabama’s “savings clause,” states:
“In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.”
In order to prevent a statute of limitations from being used as an instrument of fraud, this Court has held that § 6-2-3 applies not only to the tort of fraud, but also to torts where the existence of the cause of action has been fraudulently concealed. DGB, LLC, 55 So.3d at 224-25.
Section 6-2-3, however, does not toll the statutes of limitations for Firestone’s causes of action. The language of § 6-2-3 provides that it is the discovery of the fraudulently concealed cause of action that triggers the accrual of that cause, not the discovery of the identity of the tortfea-sor. Here, Firestone knew in 1995 that he had been injured and that a cause of action existed. Consequently, § 6-2-3, which focuses on the discovery of the cause of action, not the discovery of the identity of the tortfeasor, does not toll the limitations periods for Firestone’s claims.

B. Equitable Tolling

We next consider the doctrine of equitable tolling. “[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way” as to the filing of his action. Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). In Ex parte Ward, 46 So.3d 888 (Ala.2007), this Court “[held] that equitable tolling is *958 available in extraordinary circumstances that are beyond the petitioner’s control and that are unavoidable even with the exercise of diligence.” 46 So.3d at 897. The Court noted that in determining whether equitable tolling is applicable, consideration must be given as “ ‘to whether principles of “equity would make the rigid application of a limitation period unfair” and whether the petitioner has “exercised reasonable diligence in investigating and bringing [the] claims.” ’ ” Id. (quoting Fahy v. Horn, 240 F.3d 239, 245 (3d Cir.2001), quoting in turn Miller v. New Jersey Dep’t of Corr., 145 F.3d 616, 618 (3d Cir.1998)); see also Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (“We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary’s misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.” (footnotes omitted)). This Court acknowledged in Ward that “ ‘the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule.’ United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir.2000).” 46 So.3d at 897. The plaintiff
“bears the burden of demonstrating ... that there are !.. extraordinary circumstances justifying the application of the doctrine of equitable tolling. See Spitsyn v. Moore, 345 F.3d [796,] 799 [(9th Cir.2003)] (holding that the burden is on the petitioner for the writ of habeas corpus to show that the exclusion applies and that the ‘extraordinary circumstances’ alleged, rather than a lack of diligence on his part, were the proximate cause of the untimeliness); Drew v. Department of Corr., 297 F.3d 1278, 1286 (11th Cir.2002) (‘The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner.’).”
Ward, 46 So.3d at 897. It is well settled that whether equitable tolling is applicable in a case generally involves a “ ‘fact-specific inquiry.’ ” See, e.g., Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir.2003); Putnam v. Galaxy 1 Marketing, Inc., 276 F.R.D. 264, 275 (S.D.Iowa 2011) (“[R]esolution of the issue is fact-specific.”); see also Transport Ins. Co. v. TIG Ins. Co., 202 Cal.App.4th 984, 1012, 136 Cal.Rptr.3d 315, 337 (2012) (“[W]e are hard pressed to think of more fact-specific issues than ‘accrual’ and [equitable] ‘tolling.’ ”).[3]
The circumstances alleged in the above-quoted passages from Firestone’s complaint are the type of “extraordinary circumstances” to which equitable tolling applies. As the United States Court of Appeals for the Seventh Circuit noted just a few years ago in Fidelity National Title Insurance Co. of New York v. Howard Savings Bank, 436 F.3d 836, 839 (7th Cir.2006), “[i]f despite the exercise of reasonable diligence [the plaintiff] cannot discover his injurer’s (or injurers’) identity within the statutory period, he can appeal to the doctrine of equitable tolling to postpone the deadline for suing until he can obtain the necessary information.” The general acceptance of the availability of the doctrine of equitable tolling under truly extraordinary circumstances, like those in the case before us, is confirmed by *959 the following passage from American Jurisprudence (Second Edition):
“Equitable tolling, which allows a plaintiff to initiate an action beyond the statute of limitations deadline, is typically available only if the claimant was prevented in some extraordinary way from exercising his or her rights, or, in other words, if the relevant facts present sufficiently rare and exceptional circumstances that would warrant application of the doctrine. Equitable tolling is a remedy that permits a court to allow an action to proceed when justice requires it, even though a statutory time period has elapsed; it acts as an exception to the statute of limitations that does not extend broadly to allow claims to be raised except under narrow circumstances. The equitable tolling doctrine extends statutory deadlines in extraordinary circumstances for parties who have been prevented from complying with them through no fault or lack of diligence of their own. The time requirements in lawsuits between private litigants are ordinarily subject to equitable tolling if such tolling is necessary to prevent unfairness to a diligent plaintiff.
“Equitable tolling is only applied or used sparingly, and is available only in compelling circumstances which justify a departure from established procedures. Equitable tolling is a narrow doctrine that enables the courts to toll a statute of limitations for compelling-justifications, and the doctrine may be applied where it is justified under all the circumstances. Any inequitable circumstances preventing a party from initiating a timely lawsuit must be truly beyond the control of the plaintiff. Unlike judicial tolling, equitable tolling has a legal basis arising out of common law, and it may be invoked when traditional equitable reasons compel such a result.”
51 Am.Jur.2d Limitation of Actions § 153 (2011) (emphasis added); see also Spitsyn v. Moore, 345 F.3d at 799 (plaintiff must show a causal connection between the “extraordinary circumstances” and his untimeliness (cited with approval in Ward)).
The holding of the Supreme Court of California in Bernson v. Browning-Ferris Industries of California, Inc., 7 Cal.4th 926, 873 P.2d 613, 30 Cal.Rptr.2d 440 (1994), is particularly instructive for purposes of the present case. It speaks for itself and merits quoting at length:
“While ignorance of the existence of an injury or cause of action may delay the running of the statute of limitations until the date of discovery, the general rule in California has been that ignorance of the identity of the defendant is not essential to a claim and therefore will not toll the statute. As we have observed, ‘the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.’ (Jolly v. Eli Lilly Co., supra, 44 Cal.3d [1103,] 1110[, 245 Cal.Rptr. 658, 662, 751 P.2d 923, 927 (1988) ].) Aggrieved parties generally need not know the exact manner in which their injuries were ‘effected, nor the identities of all parties who may have played a role therein.’ (Teitelbaum v. Borders (1962) 206 Cal.App.2d 634, 639[, 23 Cal.Rptr. 868, 871].)
“Although never fully articulated, the rationale for distinguishing between ignorance of the wrongdoer and ignorance of the injury itself appears to be premised on the commonsense assumption that once the plaintiff is aware of the injury, the applicable limitations period (often effectively extended by the filing of a Doe [i.e., fictitious-party] complaint) normally affords sufficient opportunity to discover the identity of all the wrong *960 doers.... That, indeed, is the normal situation for which the fictitious name statute, Code of Civil Procedure section 474, is designed: when the plaintiff is ignorant of the name of ‘a defendant,’ the plaintiff must file suit against the known wrongdoers, and, when the Doe’s true name is discovered, the complaint may be amended accordingly. (Code Civ. Proc., § 474.)

“The question here, however, is whether the general rule should apply when, as a result of the defendant’s intentional concealment, the plaintiff is not only unaware of the defendant’s identity, but is effectively precluded as a practical matter from ascertaining it through normal discovery procedures. May a thief, for example, who leaves no clues to his identity defeat an action by the rightful owner to recover the stolen property if the owner fails to find and serve the culprit within the applicable limitations period? Should the anonymous perpetrator of an assault and battery be immune from the victim’s civil damage action after the time for identifying and serving Doe defendants has been exhausted? Or, alternatively, should the defendants in these circumstances be estopped from capitalizing upon their own misconduct under an equitable rule, akin to the rule of fraudulent concealment, which would toll the statute until the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, the defendant’s identity?

“Although we have not previously considered the issue as framed, the question has been addressed in several other jurisdictions. The problem arises not infrequently when the owner of stolen artwork discovers its whereabouts many years after the theft and files an action to recover the property. This was the situation in Autocephalous Greek-Orthodox Church v. Goldberg (S.D.Ind.1989) 717 F.Supp. 1374, affirmed sub nom. Autocephalous Church v. Goldberg & Feldman Arts (7th Cir.1990) 917 F.2d 278. A Greek Orthodox church had been vandalized during the Turkish occupation of Cyprus in 1978 and a number of valuable mosaics removed. Ten years later the mosaics resurfaced in an Indiana art gallery. The church brought a replevin action in federal court and the art dealer moved for summary judgment on the basis of the six-year Indiana statute of limitations. The district court denied the motion on the ground, inter alia, that the equitable doctrine of fraudulent concealment tolled the running of the statute until the church discovered, or through the exercise of reasonable diligence should have discovered, the location of the mosaics. (717 F.Supp. at pp. 1387-1388, 1391-1392.) ‘[T]he Court concludes that as long as the plaintiff is duly diligent, the inability to discover the possessor of the stolen mosaics invokes the doctrine of fraudulent concealment and tolls the running of the statute of limitations for replevin purposes.’ (Id. at pp. 1392-1393, fn. 12.) The Court of Appeals affirmed, observing that in the context of a replevin action for concealed works of art, ‘a plaintiff cannot be said to have “discovered” his cause of action until he learns enough facts to form its basis, which must include the fact that the works are being held by another and who, or at least where, that “other” is.’ (917 F.2d at p. 289; see also O’Keeffe v. Snyder (1980) 83 N.J. 478[, 416 A.2d 862, 870] [holding that an artist’s replev-in action for paintings stolen 30 years earlier did not accrue until she discovered, or through the exercise of reasonable diligence should have discovered, ‘the identity of the possessor of the paintings’].)
*961 “The Supreme Court of Wisconsin adopted a similar rule in a personal injury action for assault, observing: ‘A statute of limitations barring relief to victims before the defendant is, or could be, discovered violates this [equitable] guarantee of fairness.’ (Spitler v. Dean (1989) 148 Wis.2d 630, 436 N.W.2d 308, 310.) While acknowledging that the filing of a Doe complaint might have extended the time available to learn the identity of the defendant, it did not, in the Wisconsin court’s view, ‘weaken the public policy favoring the adoption of the discovery rule in this case.’ (Id. at p. 311; see also Royal Indem. Co. v. Petrozzino (3d Cir.1979) 598 F.2d 816, 819 [availability of fictitious name complaint does not preclude tolling of statute of limitations until bank’s insurer discovers identity of robber].)
“As these and other cases demonstrate, the equitable principle that a defendant who intentionally conceals his or her identity may be equitably es-topped from asserting the statute of limitations to defeat an untimely claim, has been widely embraced. (See also Lafferty v. Alan Wexler Agency, Inc. (1990) 393 Pa.Super. 400, 574 A.2d 671, 674 [‘[W]here a defendant or his agents actively mislead a plaintiff as to who are the proper defendant or defendants until after the statute of limitations period has expired, the proper remedy is to toll the statute of limitations as to the defendant regarding whom the concealment was directed.’]; Sattler v. Bailey (1990) 184 W.Va. 212, 400 S.E.2d 220, 229 [the statute of limitations is tolled when ‘despite the due diligence of the injured person to discover the identity of all the wrongdoers, the identity of one or more of them is hidden by words or acts constituting affirmative concealment’]; Noel v. Teffeau (1934) 116 N.J.Eq. 446, 174 A. 145, 147 [assertion of statute of limitations against victim of a hit-and-run who was ignorant of the identity of the driver ‘would be unconscionable’].)
“As many of the foregoing decisions observe, and as this court has often stated, the primary interest served by statutes of limitations is that of repose. Such statutes ensure that plaintiffs proceed diligently with their claims and mitigate the difficulties faced by defendants in defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps. Nevertheless, where the bar becomes a sword rather than a shield, wielded by a party that has intentionally cloaked its identity, factors of fairness and unjust enrichment come into play, which courts are bound to consider in equity and good conscience. As we long ago observed, ‘The statute of limitations was intended as a shield for [defendant’s] protection against stale claims, but he may not use it to perpetrate a fraud upon otherwise diligent suitors.’ (Pashley v. Pacific Elec. Ry. Co., supra, 25 Cal.2d [226,] 231, 153 P.2d 325[, 328 (1944) ].)
[[Image here]]
“... As Witkin observes: ‘There seems little justification in principle for limiting the estoppel rule to concealment of the cause of action. Giving the fraudulent defendant the benefit of our short limitations [period] as a reward for his fraud is hardly consistent with the purpose of the statute — protection of the defendant from stale claims of a dilatory plaintiff. From this point of view the situations are substantially similar: In each the plaintiff, by reason of the defendant’s conduct, is late in filing his action, and in each the statute is invoked by the defendant not for the legitimate purpose of preventing the surprise assertion of a stale claim but to defeat a trial on the merits of a claim well known. It is beside the point to *962 contend ... that the plaintiff could file an action against a fictitious defendant. An injured person does not go to the expense of legal representation and litigation merely because he knows he has been wronged. If he knows something of the identity of the wrongdoer he will sue though ignorant of his true name, and this is of course the use for which the pleading rule was designed.... But if he has no knowledge of the wrongdoer’s identity ... it is scarcely expecta-ble that he will file an action and hope that something turns up to make it worthwhile.... In shoii, if the neces-sai°y showing of fraud is made, it would seem that the wrongdoer’s concealment of his identity should toll the statute.’ (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 529, p. 558....)
“We agree in the main with Witkin. One should not profit from one’s own wrongdoing. Accordingly, we hold that a defendant may be equitably estopped from asserting the statute of limitations when, as the result of intentional concealment, the plaintiff is unable to discover the defendant’s actual identity. Although several of the out-of-state decisions cited earlier conclude that a tort claim ‘accrues’ only when the identity of the defendant is discovered (e.g., Spitler v. Dean, supra, 436 N.W.2d at p. 311; O’Keeffe v. Snyder, supra, 416 A.2d at p. 870), we need not go so far here. It is sufficient to hold simply that, under the circumstances described, the statute may be equitably tolled.
“The rule of equitable estoppel includes, of course, the requirement that the plaintiff exercise reasonable diligence. Thus, under our holding the statute will toll only until such time that the plaintiff knows, or through the exercise of reasonable diligence should have discovered, the defendant’s identity. Lack of knowledge alone is not sufficient to stay the statute; a plaintiff may not disregard reasonably available avenues of inquiry which, if vigorously pursued, might yield the desired information.
“One factor which must be considered pertinent to the diligence inquiry is whether the filing of a timely Doe complaint would, as a practical matter, have facilitated the discovery of the defendant’s identity within the requisite three-year period for service of process. (Code Civ. Proc., § 583.210, subd. (a); Jolly v. Eli Lilly & Co., supra, 44 Cal.3d at p. 1118, 245 Cal.Rptr. 658, 751 P.2d 923.) Where the identity of at least one defendant is known, for example, the plaintiff must avail himself of the opportunity to file a timely complaint naming Doe defendants and take discovery. However, where the facts are such that even discovery cannot pierce a defendant’s intentional efforts to conceal his identity, the plaintiff should not be penalized.
“Recognition of a potential equitable estoppel under the foregoing circumstances will not unduly burden the trial courts. Indeed, our holding will have virtually no affect on the vast majority of civil cases. It is only in those relative few where the defendant asserts a statute of limitations defense and the plaintiff claims that he was totally ignorant of the defendant’s identity as a result of the defendant’s fraudulent concealment, that the issue will even arise; among those few, it will be the rare and exceptional case in which the plaintiff could genuinely claim that he was aware of no defendants, and even more rare that, given knowledge of at least one, he could not readily discover the remainder through the filing of a Doe complaint and the normal discovery processes.”
7 Cal.4th at 932-38, 873 P.2d at 616-19, 30 Cal.Rptr.2d at 443-47 (footnotes omitted; *963 some citations omitted; and some emphasis added).
Also instructive is the holding of the United States Court of Appeals for the Tenth Circuit in Allred v. Chynoweth, 990 F.2d 527 (10th Cir.1993), in which a defendant admitted that she had committed a murder of which she previously had been acquitted in a criminal trial. A wrongful-death action was then filed against her. The Court of Appeals held that the statute of limitations applicable to the tort of wrongful death was tolled on the grounds of both fraudulent concealment and exceptional circumstances:
“Because Ms. Chynoweth does not contest liability, she cannot assert the delay has impaired her ability to present a defense. Her only claim is that plaintiffs should not be able to recover because she successfully prevented them from discovering her liability for many years. That is not within the ambit of equitable concern which motivates the adoption of statutes of limitations.”
990 F.2d at 532.
Despite the presence of “extraordinary circumstances” here, Weaver argues that equitable tolling is not available because Firestone purportedly could have utilized fictitious-party pleading and filed a complaint before he discovered the identity of his assailants and that of Weaver, his assailants’ co-conspirator. Rule 9(h), Ala. R. Civ. P., states:
“When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when that party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.”
This Court has noted that “Rule 9(h), Ala. R. Civ. P., allows a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can later be substituted.” Sherbert v. SCE, Inc., 678 So.2d 1115, 1117 (Ala.Civ.App.1996).
According to Weaver, Firestone could have timely filed a complaint naming as defendants only fictitious parties and that complaint would have served to commence an action against the alleged tortfeasors. Indeed, Weaver maintains that “the exercise of reasonable diligence” required that Firestone file such a complaint under Rule 9(h).
We reject Weaver’s argument for two reasons. First, filing an unservable complaint with only fictitiously named defendants does not, under our precedents, commence an action and stop the running of the statute of limitations. It accomplishes nothing insofar as satisfying the requirement that a plaintiff “exercise ... diligence” in identifying the defendant or defendants and commencing an action against them. Second, even if we were to “reverse field” as to the above-referenced precedents and accept the notion that the filing of an unserved and unservable fictitious-party complaint could be used to toll the running of a statute of limitations, that option should not be deemed a requirement when the conditions for equitable tolling are otherwise satisfied.
Our cases have clearly established the principle that the mere filing of a complaint is not a sufficient act in and of itself to commence an action for purposes of satisfying the statute of limitations but that there also must be an actual issuance of the “summons” and a delivery of it to the sheriff or other appropriate “office” with a “bona fide unequivocal intention of having it served.” Ward v. Saben Appliance Co., 391 So.2d 1030, 1033 (Ala.1980). As this Court explained in Saben Appliance Co.:
*964 “The Court [in West v. Engel, 101 Ala. 509, 509-10, 14 So. 333, 334 (1893)], reasoned as follows:
“‘In Burdick v. Green, 18 Johns. 14 [(N.Y.1820)], it was held that the issuing of the writ is the commencement of the action, in all cases where time is.'material, so as-to save the statute of limitations; and that it is not necessary to show that it was actually delivered to the sheriff, but sufficient if made out and sent to him by mail or otherwise, with a bona fide, intention of having it served.
[[Image here]]
“ ‘Ross v. Luther, 4 Cow. 158 [(N.Y.1825)], is a case directly in point, where it was held, that the issuing of the writ was the commencement of the action; that the mere filing it up is not sufficient; it must be either delivered to the sheriff or sent to him by mail or otherwise, with a bona fide, absolute, unequivocal intention to have it served; that if delivered to an agent or messenger who has power to determine, when or whether it shall be given to the sheriff, the writ is not deemed issued, nor the suit commenced ....
[[Image here]]
“‘Our conclusion, therefore, from our own and other adjudged cases, is, that a summons can not be said to be sued out, under our statute, until it passes from the hands of the clerk to the sheriff, or other proper office, to be executed or sent by mail or otherwise, with a bona fide unequivocal intention to have it served.’ ([Some e]m-phasis supplied.)”
391 So.2d at 1033 (some emphasis added). The Saben Appliance Co. Court went on to note:
“Various states with commencement statutes similar to Rule 3, [Ala. R. Civ. P.], have held that a civil action is commenced only when the complaint or other pleading is filed with the intention of having it served in due course. Louisville & N.R. Co. v. Little, 264 Ky. 579, 95 S.W.2d 253 (1936) (action not commenced when plaintiffs attorney filed the complaint but failed to deliver the complaint for process); Green v. Ferguson, 184 S.W.2d 790 (Mo.App.1945) (action not commenced where plaintiffs attorney filed a petition but instructed the clerk to withhold process); Erving’s Hatcheries, Inc. v. Garrott, [250 Miss. 701], 168 So.2d 52 (Miss.1964) (action not commenced where plaintiffs attorney filed a complaint but instructed the clerk to withhold process); Deboer v. Fattor, 72 Nev. 316, 304 P.2d 958 (1956) (action not commenced where plaintiff’s attorney filed a complaint but failed to deliver the complaint to the sheriff for service ).”
391 So.2d at 1034-35 (emphasis omitted; emphasis added). The Saben Appliance Co. Court concluded with the following pronouncement:
“We hold that in the present case the action was not ‘commenced’ when it was filed with the circuit clerk because it was not filed with the bona fide intention of having it'immediately served.”
391 So.2d at 1035 (emphasis added).
Obviously, when only fictitious parties are named in a complaint,, there is no defendant to be served, and the plaintiff is not in a position to demonstrate his or her intent actually to commence the action, i.e., for the plaintiff to engage in the type of conduct our cases have held necessary to establish a bona fide intent to commence an action. In Ex parte East Alabama Mental Health-Mental Retardation Board, Inc., 939 So.2d 1, 3 (Ala.2006), this Court stated: “[Tfhe filing of a complaint, standing alone, does not commence an action for statute-of-limitations purposes.
*965 ‘ “Rather, the filing must be made with the intention of serving process upon the opposing party or parties.” ’ Maxwell v. Spring Hill College, 628 So.2d 335, 336. (Ala.1993) (quoting Latham v. Phillips, 590 So.2d 217, 218 (Ala.1991)).”
In Maxwell v. Spring Hill College, 628 So.2d 335 (Ala.1993), the plaintiff filed a complaint but failed to take action to initiate service of the complaint. Specifically, the plaintiff simply failed to “provide summonses, service instructions, or addresses until approximately one month” after filing the complaint. 628 So.2d at 336. Although the case involved no “overt action” to withhold service, this Court agreed with the defendant that the mere failure of service was sufficient to defeat the commencement of an action:
“Spring Hill correctly asserts that this case is factually similar to Latham [v. Phillips, 590 So.2d 217 (Ala.1991)]. The accident in Latham occurred on March 5, 1988, and the plaintiff filed her complaint on March 2, 1990, although she did not pay the filing fee until March 5, 1990. She did not supply summonses for the defendants when she filed the complaint, nor did she supply them when she paid the filing fee three days later. In addition, no addresses were contained within the complaint and no instructions were given to the clerk concerning how to proceed with service of process. Certified mail summonses were not filed until April 4, 1990, approximately one month after the limitations period had run. One of the defendants moved for a summary judgment, which the trial court entered and this Court affirmed.
“In this case, a summons for Spring Hill was not filed until one month after the statutory period had expired. In addition, the address Maxwell’s mother provided with that summons — that of the Mobile law firm of Vickers, Riis, Murray and Curran — was incorrect, because that firm was not authorized in any way, as an agent or otherwise, to receive service for Spring Hill....
“It is apparent that Spring Hill was entitled to a summary judgment based on the expiration of the statutory limitations period.”
628 So.2d at 336.
As this Court stated in Freer v. Potter, 413 So.2d 1079, 1081 (Ala.1982):
“ fT]he action was not “commenced” when it was filed with the circuit clerk because it was not filed with the bona fide intention of having it immediately served.... ’
“... [FJiling [a complaint] calls far an implied demand for immediate service.”
(Emphasis added.)
It is contended that the filing of a complaint naming only fictitious parties under facts such as those presented here indicates that the plaintiff has an intent to serve the complaint and prosecute the action as soon as the identity of the tortfea-sor is discovered or, in other words, “in due course.” How can we say for purposes of this case, however, that the mere filing of a complaint would indicate anything regarding the intention of the party as to when the complaint will be served? It was the fact that the mere filing of a complaint does not carry with it sufficient indication of intent that this Court developed the above-discussed rule that the filing of a complaint must be accompanied by some additional physical action, i.e., initiating and attempting to achieve physical service of the complaint on a defendant. We know no more from “the filing of a complaint ... under these facts” than that the plaintiff intended to “file[ ] a complaint ... under these facts.”
In sum, requiring an injured party who is unaware of the name of any potential defendant to file a complaint naming as defendants only fictitious parties on the *966 ground that such a filing, standing alone, is sufficient to indicate an intent to serve that complaint one day and therefore also is sufficiént to commence an action and toll the running of the statute of limitations logically cannot be reconciled with — indeed it subverts — our established caselaw that we cannot reach any conclusions about a plaintiffs intent to serve a complaint merely from the act of filing the complaint and that the mere filing of a complaint is not sufficient to commence an action and satisfy the statute of limitations.
We are bolstered in our application of the above-cited precedents by the simple fact that the filing of a complaint without the initiation of service upon any party does nothing to satisfy the purpose behind statutes of limitations. As this Court noted in Travis v. Ziter, 681 So.2d 1348, 1352 (Ala.1996):
“[T]he public policy behind the time-bar concept [of statutes of limitations] is quite clear:
“'... [T]o prevent fraudulent and stale claims from springing up after long periods of time and surprising the parties or their representatives when evidence has become lost or the facts have become obscure from the lapse of time. 53 C.J.S. Limitations of Actions § 1, at 902-903, and authorities cited therein.’ ”
(Quoting Stephens v. Creel, 429 So.2d 278 (Ala.1983), quoting in turn Seybold v. Magnolia Land Co., 376 So.2d 1083, 1086 (Ala.1979).) The Travis Court further noted:
“The ultimate consideration in determining whether to allow the Travises’ claims to survive through application of the [pertinent] tolling provision is whether the policy goals furthered and protected by the statute of limitations would remain intact if that were allowed. At its core, the statute of limitations advances the truth-seeking function of our justice system, promotes efficiency by giving plaintiffs an incentive to timely pursue claims, and promotes stability by protecting defendants from stale claims.”
681 So.2d at 1355.
Requiring a plaintiff who has no knowledge of the name of any defendant to file a fictitious-party complaint simply to preserve the availability of the doctrine of equitable tolling does nothing to further the purposes of a statute of limitations. Assuming the plaintiff is otherwise acting diligently in trying to identify the name or names of the defendant or defendants— which already would be a prerequisite to the availability of equitable tolling, see Meeks v. Meeks, 245 Ala. 559, 567, 18 So.2d 260, 267 (1944) (“ ‘It is inherent doctrine of equity jurisdiction that nothing less than conscience, good faith, and reasonable diligence can call courts of equity into activity, and that they will not grant aid to a litigant who has negligently slept on his rights and suffered his demand to become stale where injustice would be done by granting the relief asked.’ ” (quoting 21 Corpus Juris § 212)) — requiring the plaintiff to file a complaint that names only a fictitious defendant or defendants will avail nothing insofar as either the plaintiff or the defendant is concerned. It will not serve to “advance[ ] the truth-seeking function of our justice system.” Travis, 681 So.2d at 1355. The filing of such a complaint will not help the plaintiff identify the name of the defendant or names of the defendants; it will simply affirm to the court in which the complaint is filed that the plaintiff does not yet know the name of the defendant or defendants.[4]
*967 Nor is it remotely likely that the filing of such a complaint would provide any person with any real notice as to the plaintiffs claims so that that person might begin the process of preserving evidence before memories dim and documents are lost— unless we are to assume that everyday citizens peruse court records seeking to know whether they might be the subject of a fictitious-party complaint. Indeed, the only thing the fictitious-party-complaint requirement would appear to accomplish under circumstances such as those presented here is the generation of work for the lawyer hired to draft and file the complaint, the establishment of a meaningless legal hurdle to the entitlement to equitable relief, and a “trap” for the unwary party and practitioner, alike, created by this non-intuitive requirement not found in any rule of procedure.[5]
As noted above, even if we were to “reverse field” as to the above-discussed precedent and accept the notion that the filing of an unservable fictitious-party complaint should be deemed to toll the running of a statute of limitations, the presence of such an option should not be considered an obstacle to the application of the doctrine of equitable tolling in those rare cases where the conditions for the application of that doctrine are present. As the Court in Bernson observed:
“The Supreme Court of Wisconsin adopted a similar rule in a personal injury action for assault, observing: ‘A statute of limitations barring relief to victims before the defendant is, or could be, discovered violates this [equitable] guarantee of fairness.’ (Spitler v. Dean (1989) 148 Wis.2d 630, 436 N.W.2d 308, 310.) While acknowledging that the filing of a Doe complaint might have extended the time available to learn the identity of the defendant, it did not, in the Wisconsin court’s view, ‘weaken the public policy favoring the adoption of the discovery rule in this case.’ (Id. at p. 311; see also Royal Indem. Co. v. Petrozzino (3d Cir.1979) 598 F.2d 816, 819 [availability of fictitious name complaint does not preclude tolling of statute of limitations until bank’s insurer discovers identity of robber].)
[[Image here]]
“... It is beside the point to contend ... that the plaintiff could file an action against a fictitious defendant. An injured person does not go to the expense *968 of legal representation and litigation merely because he knows he has been wronged. If he knows something of the identity of the wrongdoer he will sue though ignorant of his true name, and this is of course the use for which the pleading rule was designed.... But if he has no knowledge of the wrongdoer’s identity ... it is scarcely expectable that he will file an action and hope that something turns up to make it worthwhile. ... In short, if the necessary showing of fraud is made, it would seem that the wrongdoer’s concealment of his identity should toll the statute.’ (8 Wit-kin, Cal. Procedure (3d ed. 1985) Actions, § 529, p. 558....)”
7 Cal.4th at 934-36, 873 P.2d at 617-19, 30 Cal.Rptr.2d at 444-46.
“[W]here the bar becomes a sword rather than a shield, wielded by a party that has intentionally cloaked its identity, factors of fairness and unjust enrichment come into play, which courts are bound to consider in equity and good conscience. As we long ago observed, ‘The statute of limitations was intended as a shield for [defendant’s] protection against stale claims, but he may not use it to perpetrate a fraud upon otherwise diligent suitors.’ (Pashley v. Pacific Elec. Ry. Co., supra, 25 Cal.2d [226,] 231, 153 P.2d 325[, 328 (1944)].)”
7 Cal.4th at 935, 873 P.2d at 618, 30 Cal. Rptr.2d at 445.
Indeed, requiring that a plaintiff file a complaint against a fictitiously named defendant within the pertinent limitations period as a precondition to his or her entitlement to relief under the doctrine of equitable tolling would effectively eliminate the doctrine of equitable tolling in cases such as the one presented here. If filing a complaint against only a fictitiously named defendant or defendants is necessary in all cases in order to preserve a claim against an unknown defendant, then it follows that in all cases the commencement of that action within the applicable limitations period will be accomplished without actually resorting to the doctrine of equitable tolling. A subsequent amendment to the complaint that adds the real names of the fictitiously named defendant or defendants and that is in compliance with the requirements applicable to fictitious-party practice will relate back to the date of the filing of the complaint. See Rule 15(c)(4), Ala. R. Civ. P. (“An amendment of a pleading relates back to the date of the original pleading when ... relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h).”); Dannelley v. Guarino, 472 So.2d 983, 986 (Ala.1985) (holding that, where a plaintiff meets the requirements of Rule 9(h), Ala. R. Civ. P., “amendments to the complaint relate[ ] back to the date of the original filing and, consequently, the cause of action stated against the defendants is not barred by the running of the statute of limitations”). Thus, accepting Weaver’s argument would mean that the doctrine of equitable tolling no longer has a field of operation in those cases in which the plaintiff has no way of learning the identity of the tortfeasor or even in cases in which multiple tortfeasors have engaged in a conspiracy to conceal their identities. Weaver would have us turn equity “on its head” by eliminating the availability of equitable relief in extraordinary- circumstances rather than acknowledge its continuing availability in such circumstances. We decline that invitation.

IV. Conclusion

Because Firestone has alleged facts that would support the conclusion that equitable tolling is applicable in the present case, the trial court did not err by denying Weaver’s motion to dismiss Firestone’s complaint as untimely.
*969 APPLICATION GRANTED; OPINION OF JANUARY 11, 2018, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
PARKER, MAIN, WISE, and BRYAN, JJ., and SMITH, Special Justice,* concur.
BOLIN, J., concurs in the result.
STUART and SHAW, JJ., dissent.
MOORE, C.J., recuses himself.

. Collins died while Firestone’s action was pending. Thereafter, the trial court dismissed the claims against him. Also, the trial court entered a default judgment against Tooley and Collins, Jr., because they failed to respond to the complaint.

. There is some discrepancy in the pleadings as to whether Firestone discovered the identity of three of his attackers — Tooley, Collins, and Collins, Jr. — on November 6, 2009 (which we assume was the date on which these three individuals were arrested or charged in connection with the attempted murder of Firestone), or on August 9, 2010, the date on which these individuals pleaded guilty. In any event, as noted, Firestone' alleges in paragraph 15 of his complaint that he could not and did not discover Weaver's alleged role in the attacks on him until the latter date. As noted, the trial court understood Firestone’s complaint to allege that, despite Firestone’s diligent efforts to discover Weaver’s identity, he could not do so until the other assailants pleaded guilty on August 9, 2010, and implicated Weaver.

. Our holding in the present case concerns only whether Firestone should have an opportunity to offer evidence to prove that he meets the requirements of equitable tolling. The trial court did not address, and we do not address, whether Firestone will succeed on the merits as to the equitable-tolling issue.

. This is not a case in which the plaintiff knew the name of at least one defendant and, by forgoing the filing of a complaint against that defendant, could be accused of a lack of diligence in not putting himself in a position to pursue formal discovery as to other tortfea- *967 sors whose existence, but not identity, is known:
"One factor which must be considered pertinent to the diligence inquiry is whether the filing of a timely Doe complaint would, as a practical matter, have facilitated the discovery of the defendant’s identity within the requisite three-year period for service of process. (Code Civ. Proc., § 583.210, subd. (a); Jolly v. Eli Lilly & Co., supra, 44 Cal.3d [1103] at p. 1118, 245 Cal.Rptr. 658, 751 P.2d 923 (1988).) Where the identity of at least one defendant is known, for example, the plaintiff must avail himself of the opportunity to file a timely complaint naming Doe defendants and take discovery. However, where the facts are such that even discovery cannot pierce a defendant's intentional efforts to conceal his identity, the plaintiff should not be penalized."
Bernson, 7 Cal.4th at 936-37, 873 P.2d at 619, 30 Cal.Rptr.2d at 446.

. In fact, construing Rule 9(h) as contemplating the preparation and filing of a complaint that names nothing but fictitious parties as defendants and that might or might not ever be served on anyone but will simply occupy space at the courthouse until some future unknown date (and especially to require this action as a prerequisite to procuring equitable relief under such doctrines as equitable tolling) does not appear to be in accord with the admonition that our Rules of Civil Procedure are to "be construed and administered to secure the just, speedy and inexpensive determination of every action." Rule 1, Ala. R. Civ. P.