STUART, Justice.
These consolidated appeals arise from two separate breach-of-contract actions filed in the Baldwin Circuit Court by Slack Alost Development Services of Alabama, LLC (“Slack Alost”), against individuals who failed to close on condominiums they had contracted to purchase in Slack Alost’s Bel Sole development in Gulf Shores. In the underlying action in appeal no. 1080069, Slack Alost sued Tony R. Smith and Albert Weems, who is not a party to the appeal, for failing to complete their condominium purchase, and in the underlying action in appeal no. 1080074, Slack Alost sued Jerry E. Hazel for failing to complete his condominium purchase. On August 19, 2008, the trial court entered a summary judgment against Weems and awarded Slack Alost $166,424. That same date, it also entered a summary judgment against Hazel and awarded Slack Alost $120,522. Smith and Smith & Weems Investments, LLC, which provided earnest money in the form of a letter of credit on behalf of Weems, and which was added as an indispensable party pursuant to Rule 19(a), Ala. R. Civ. P., now appeal the summary judgment entered against Weems, and Hazel appeals the judgment entered against him. We dismiss the appeal filed by Smith and Smith & Weems Investments in appeal no. 1080069, and we reverse the judgment entered against Hazel in appeal no. 1080074.
I.
On July 22, 2005, Slack Alost and Weems entered into a preconstruction contract whereby Weems agreed to purchase unit 901 in the Bel Sole condominium development for $820,000. The contract also identified Tony Smith as a purchaser and contains his purported signature and initials alongside Weems’s signature and initials. Smith, however, denies signing or initialing the contract; he alleges that his signature and initials were forged.[1] The contract contained provisions requiring the purchasers to provide, within 15 days, an earnest-money deposit in the form of an irrevocable standby letter of credit in an amount equal to 20% of the purchase price, or $164,000, and authorizing Slack Alost to draw upon that letter of credit for the full amount if the purchasers failed to complete the purchase. In compliance with this provision, a letter of credit from Am-South Bank in that amount was delivered to White Sands, Inc., the escrow agent identified in the contract. The letter of credit was applied for by and issued on behalf of Smith & Weems Investments, LLG, a limited liability company of which Smith and Weems are the only two members. Smith testified in his deposition that both his and Weems’s signatures are required on any contract entered into by Smith & Weems Investments.
On November 17, 2005, Slack Alost and Hazel entered into a preconstruction con *558 tract whereby Hazel agreed to purchase unit 302 in the Bel Sole condominium development for $590,000. This contract was similar in all material respects to the contract entered into by Weems, and it required Hazel to provide, within 15 days, an earnest-money deposit in the form of an irrevocable standby letter of credit in an amount equal to 20% of the purchase price, or $118,000, and authorized Slack Alost to draw upon that letter of credit for the full amount if Hazel failed to complete his purchase. AmSouth Bank thereafter issued a letter of credit in that amount on behalf of Hazel and delivered it to the escrow agent, White Sands.
On January 19, 2007, Slack Alost sent a letter to Weems and Smith and another to Hazel informing them that construction on Bel Sole was near completion and asking them to schedule a closing on them respective units sometime during the week beginning Monday, February 5, and ending Friday, February 9, 2007. When none of the parties took any action to schedule the closings, Slack Alost scheduled Weems and Smith’s closing for April 2, 2007, and Hazel’s closing for April 5, 2007, and notified the parties by letter of the scheduled closings. Slack Alost alleges that it was ready, willing, and able to close on the two units on those dates; however, neither Weems or Smith nor Hazel appeared for their scheduled closings. Slack Alost therefore took the position that Weems, Smith, and Hazel were in default and requested that White Sands draw upon the respective standby letters of credit and disburse the proceeds to Slack Alost as provided in the sales contracts in the event the purchaser defaulted. White Sands responded that it would disburse the proceeds only with the written consent of all the parties or pursuant to a court order.
On May 15, 2007, Slack Alost sued Hazel, alleging that he breached his contract to purchase unit 802, and, on May 17, 2007, Slack Alost filed a separate action against Weems and Smith alleging that they breached their contract to purchase unit 901. Both actions also named White Sands as a defendant and sought injunc-tive relief against it based on its refusal to draw on the letters of credit. Slack Alost subsequently moved the trial court, pursuant to Rule 19(a), Ala. R. Civ. P., to add Smith & Weems Investments as a party in the case against Weems and Smith based on the fact that it was the entity named in the standby letter of credit issued by Am-South Bank. That motion was granted and, due to the similar allegations in the two complaints filed by Slack Alost, the trial court consolidated the two cases for discovery purposes.
In September 2007, Regions Bank — the successor to AmSouth Bank — notified White Sands that the letters of credit issued on behalf of Hazel and Smith & Weems Investments would expire on November 16, 2007, and November 28, 2007, respectively, and that it was not renewing those letters of credit. On October 12, 2007, Slack Alost moved the trial court to issue an injunction requiring White Sands to draw on both letters of credit and to deposit the proceeds with the court. White Sands joined in that motion and, on November 14, 2007, the motion was granted. The letters of credit were subsequently drawn upon and the proceeds were deposited with the court.
On June 24, 2008, Slack Alost filed separate motions seeking summary judgments against Hazel and Weems. Slack Alost did not move for a summary judgment against Smith or Smith & Weems Investments. On August 19, 2008, the trial court granted both motions and, after adding an appropriate amount for prejudgment interest, entered a judgment against Hazel for *559 $120,522 and against Weems for $166,424.[2] The trial court also directed the circuit court clerk to disburse to Slack Alost the funds previously deposited with the court. Hazel, Weems, Smith, and Smith & Weems Investments moved the trial court to reconsider its judgments; however, those motions were denied. Hazel then filed his notice of appeal, and Smith and Smith & Weems Investments filed a separate notice of appeal.[3] Weems is not a party to that appeal.
II.
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala.Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
III.
We first consider Hazel’s appeal from the summary judgment entered against him (appeal no. 1080074). Hazel argues that he never received an offering statement as required by the Alabama Uniform Condominium Act, § 35-8A-101 et seq., Ala.Code 1975, and that he was accordingly entitled to cancel the contract he had entered into to purchase unit 302 without penalty. Section 35-8A-408 provides:
“(a) A person required to deliver an offering statement pursuant to section 35-8A-402(c) shall provide a purchaser of a unit with a copy of the offering statement and all amendments thereto before conveyance of that unit, and not later than the date of any contract of sale. Unless a purchaser is given the offering statement more than seven days before execution of a contract for the purchase of a unit, the purchaser may cancel the contract, or rescind the conveyance if a conveyance has already occurred, within seven days after first receiving the offering statement.
“(b) If a purchaser elects to cancel a contract or conveyance pursuant to subsection (a), he may do so by hand-delivering notice thereof to the offeror or by mailing notice thereof by prepaid United States mail to the offeror or to his agent for service of process. Cancellation is without penalty, and all payments made by the purchaser before cancellation shall be refunded promptly.
*560 “(c) If a person required to deliver an offering statement pursuant to section 35-8A-402(c) fails to provide a purchaser to whom a unit is conveyed with that offering statement and all amendments thereto as required by subsection (a), the purchaser, at the purchaser’s option and in lieu of any rights to damages or other relief, is entitled to receive from that person an amount equal to five percent of the sales price of the unit at anytime prior to the expiration of six months from the date of conveyance of the unit, plus five percent of the share, proportionate to his common expense liability, of any indebtedness of the association secured by security interests encumbering the condominium.”
In conjunction with the construction of the Bel Sole condominium development, Slack Alost produced an offering statement dated July 1, 2005, and an amended offering statement dated January 5, 2007. Hazel alleges that Slack Alost failed to deliver either of these offering statements to him and that he did not receive them until after Slack Alost commenced this litigation. He further alleges that, pursuant to § 35-8A-408, he rescinded his contract to purchase unit 302 by a letter from his attorney to Slack Alost dated April 30, 2007.
Slack Alost, however, argues that Hazel not only received an offering statement when he signed the sales contract for unit 302, but he also specifically initialed and dated paragraph 15 of that contract, which provides that the “ [purchaser acknowledges receipt of a copy of the offering statement with respect to the unit and the condominium prepared in accordance with the Alabama Uniform Condominium Act ... and purchaser represents that purchaser has read and is familiar with the provisions thereof.” Moreover, Slack Alost submitted to the trial court in conjunction with its motion for a summary judgment the following deposition testimony of Hazel’s in which he admitted initialing paragraph 15:
“Q. When you got — when you signed Plaintiffs Exhibit 17, the pre-con-struction contract for unit 302, were you provided with a copy?
“A. Of the contract?
“Q. Yes.
“A. Yes.
“Q. What other documents were you provided?
“A. Did I provide?
“Q. What other documents were you provided?
“A. Oh, that I was provided? None that I know of.
“Q. Okay. Did you read the contract before you signed it?
“A. No, sir.
“Q. Okay. Did you understand when you signed it you were responsible for the contents of the contract and having read it and know what it said?
“A. Yes, sir. Yes, sir.
“Q. Is it your contention in this lawsuit and here under oath that you never received a copy of the offering statement for this project?
“A. I never received one that I know of, and let me preface that by saying I have everything that I ever got on Bel Sole in a file at home just like I have everything that I got from Island Towers and Legacy Key in a file. There was no offering statement. I did get an offering statement with Island Towers. I did not get one from Bel Sole.
[[Image here]]
*561 “Q. You initialed, on November 10th, 2005, a statement acknowledging your receipt of the offering statement for Bel Sole, correct?
“A. Yes, sir, I initialed it.
“Q. Okay. And your initial is — you understood to be recognition, by anybody reading this contract, that you had received that offering statement?
“A. Yes, sir.”
Thus, in spite of the fact that he acknowledges signing a contract specifically indicating that he did receive the original offering statement, Hazel now maintains that he did not actually receive that offering statement, offering as evidence the fact that he cannot find it in his files. Ultimately, however, whether Hazel received the original offering statement is immaterial to the resolution of this appeal because there is no evidence in the record indicating that Hazel received the January 5, 2007, amended offering statement, which, under § 35-8A-408(a), Slack Alost was also required to provide Hazel. See Commissioners’ Commentary to § 35-8A-408 (“Subsection (a) requires that each purchaser be provided with both the offering statement and all amendments thereto pri- or to the time that the unit is conveyed. If there is a contract for the sale of the unit, these documents must be provided not later than the date of the contract. The section makes clear that any amendments to the offering statement prepared between the date of any contract and the date of conveyance must also be provided to the purchaser.”).[4] When asked at his deposition if he had ever received an offering statement from Bel Sole, Hazel stated: “I never received one that I know of .... I did not get one from Bel Sole.” Although Slack Alost has submitted evidence indicating that Hazel did, in fact, receive the July 1, 2005, offering statement, it has submitted no evidence indicating that Hazel received the January 5, 2007, amended offering statement. A genuine issue of material fact therefore exists on this point, and the summary judgment entered against Hazel is due to be reversed for that reason and the case remanded. Accordingly, we need not consider the other arguments raised by Hazel in his appeal.
IV.
We next consider the appeal filed by Smith and Smith & Weems Investments (appeal no. 1080069). After that appeal was filed, Slack Alost moved this Court to dismiss the appeal, arguing, first, that Smith and Smith & Weems Investments lacked standing to appeal the summary judgment entered against Weems because they were not a party to it and, second, that the summary judgment they sought to appeal was a nonfinal judgment because there was still an outstanding claim against Smith. For the reasons that follow, we dismiss the appeal.
As a matter of procedure, this Court routinely remands causes to the trial court on the basis that the judgment being appealed is not a final judgment if the appellant is seeking review of a judgment that failed to resolve all the claims asserted in that action, unless the trial court has expressly invoked Rule 54(b), Ala. R. Civ. P., so as to make that judgment final. Foster v. Greer & Sons, Inc., 446 So.2d 605, 609-10 (Ala.1984). Accordingly, on February *562 2, 2009, this Court remanded the cause for the trial court to determine whether (1) to make the judgment entered against Weems final pursuant to Rule 54(b), Ala. R. Civ. P.;[5] (2) to adjudicate the remaining claim against Smith, thus making the judgment entered against Weems final and appealable; or (3) to take no action, in which ease the appeal filed by Smith and Smith & Weems Investments (no. 1080069) would be dismissed as being from a nonfi-nal judgment. On February 17, 2009, the trial court entered an order certifying the judgment entered against Weems as final pursuant to Rule 54(b).
“If a trial court certifies a judgment as final pursuant to Rule 54(b), an appeal will generally lie from that judgment.” Baugus v. City of Florence, 968 So.2d 529, 531 (Ala.2007) (emphasis added). The exception to that rule is that this Court will not consider an appeal from a judgment certified as final under Rule 54(b) if it determines that the trial court exceeded its discretion in concluding that there is “no just reason for delay.” Rule 54(b); see also Centennial Assocs., Ltd. v. Guthrie, 20 So.3d 1277, 1279 (Ala.2009) (“Although the order made the basis of the Rule 54(b) certification disposes of the entire claim against Guthrie, thus satisfying the requirements of Rule 54(b) dealing with eligibility for consideration as a final judgment, there remains the additional requirement that there be no just reason for delay. A trial court’s conclusion to that effect is subject to review by this Court to determine whether the trial court exceeded its discretion in so concluding”). This Court has previously held that a trial court exceeds its discretion in this area when the claim or claims that remain pending in the trial court present issues that are “intertwined” with the issues presented in the claim certified as final pursuant to Rule 54(b). See, e.g., Howard v. Allstate Ins. Co., 9 So.3d 1213, 1215 (Ala.2008) (“It would accordingly be contrary to the interests of justice to adjudicate these remaining claims against Gonzales and Elizondo separately from the claims against the other defendants; the common issues are intertwined.”).
In the instant case, it is apparent that at least some of the issues presented in the still pending claim against Smith are the same as the issues presented in the appeal now brought by Smith and Smith & Weems Investments. Weems and Smith are business partners accused of breaching the same real-estate contract, and, as Hazel did, Weems and Smith have both argued that Slack Alost never presented them with the original offering statement or the amended offering statement for the Bel Sole condominium development, in violation of § 35-8A-408. In Centennial Associates, Ltd., we stated that “ ‘[i]t is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be required to consider again when another appeal is brought after the [trial] court renders its decision on the remaining claims or as to the remaining parties.’ ” 20 So.3d at 1281 (quoting 10 Charles Alan Wright et al., Federal Practice and Procedure § 2659 (1998)). Repeated appellate review of the same underlying facts would be a probability in this case, and, in light of this Court’s stated policy disfavoring appellate review *563 in a piecemeal fashion, see Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala.2004), we accordingly hold that the trial court exceeded its discretion in certifying the judgment entered against Weems as final pursuant to Rule 54(b). Appeal no. 1080069 is therefore dismissed.[6]
V.
The trial court entered a summary judgment in favor of Slack Alost and against Hazel in appeal no. 1080074. However, because Hazel has demonstrated that there is a genuine issue of material fact as to whether he was provided the amended offering statement for Bel Sole as required by § 35-8A-408, the judgment entered against him is hereby reversed and the cause remanded to the trial court.
In appeal no. 1080069, Smith and Smith & Weems Investments appeal the summary judgment entered by the trial court in favor of Slack Alost and against Weems. However, because the trial court has not entered a judgment on a similar claim Slack Alost has asserted against Smith in the same action, which claim is based upon essentially the same facts and raises many of the same issues, the trial court exceeded its discretion in certifying the judgment entered against Weems as final pursuant to Rule 54(b). Accordingly, appeal no. 1080069 is hereby dismissed.
1080069 — DISMISSED.
1080074 — REVERSED AND REMANDED.
LYONS, WOODALL, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
COBB, C.J., and MURDOCK, J., concur in the result.

. At his deposition, Weems testified that the signature and initials purporting to be Smith’s do not, in fact, match Smith’s writing, and Weems further speculated that they were added to the contract by somebody in the office of the real-estate agent who handled the sales transaction.

. The contract between Weems and Slack Alost included a provision stating that “[a]ll obligations of purchaser hereunder, where there may be more than one purchaser, shall be joint and several.” Thus, regardless of whether Smith is ultimately found to have also signed the contract, Weems is liable for all the obligations under the contract.

. This Court remanded the cases for the entry of a Rule 54(b), Ala. R. Civ. P., certification, and, in response, the trial court certified its summary judgments as final.

. We note that the Commissioners’ Commentary to § 35-8A-408 indicates that the issuance of an amended offering statement does not automatically give the purchaser another seven-day window in which to rescind the contract. Whether an amended offering statement has that effect depends upon whether the amendments are material or merely technical.

. Rule 54(b) provides, in part:
"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

. Because we are dismissing the appeal filed by Smith and Smith & Weems Investments as being from a nonfinal judgment, we need not consider Slack Alost’s argument that that appeal is also due to be dismissed based on Smith's and Smith & Weems Investments' alleged lack of standing.