PARKER, Justice.
This Court's opinion of May 12, 2017, is withdrawn, and the following is substituted therefor.
Roger D. Firestone sued Carl Weaver, Charles Tooley ("Tooley"), L.C. Collins, Jr. ("L.C."), and Mickie Wayne Collins ("Mickie") (hereinafter collectively referred to as "the defendants"), alleging that the defendants conspired to and did brutally assault and batter and attempt to murder Firestone and seeking damages. Firestone appeals from a summary judgment entered by the Coosa Circuit Court *591 in favor of Weaver dismissing Firestone's claims against Weaver as barred by the applicable statutes of limitations.[1]
Facts and Procedural History
Firestone's deposition testimony indicates that Firestone, Chuck Amberson, and Daryl Coleman frequented a hunting cabin they had built in Coosa County ("the hunting cabin"). According to Firestone's deposition testimony, Amberson and Coleman regularly smoked crystal methamphetamine at the hunting cabin, a supply of which they kept in "a hiding place somewhere" at the hunting cabin.
In a statement Tooley gave the Coosa County Sheriff's Department after he was apprehended for the offense and after waiving his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Tooley indicated that Weaver knew that there was "a bunch of crystal meth" at the hunting cabin. Tooley said in his statement that Weaver took Tooley to the area where the hunting cabin was located to show him where the cabin was and urged Tooley to return to the cabin to steal the crystal methamphetamine. According to Tooley's statement, Weaver gave Tooley $600 "for expenses" and Tooley recruited L.C. and Mickie to help him steal the crystal methamphetamine.
Firestone's deposition testimony indicates that, on May 16, 1995, Firestone, Amberson, and Coleman were at the hunting cabin when Tooley, L.C., and Mickie arrived. L.C. and Mickie restrained Firestone, Amberson, and Coleman and questioned them about the location of the crystal methamphetamine and any cash they may have had. Coleman gave L.C. and Mickie the crystal methamphetamine, and Firestone, Amberson, and Coleman gave L.C. and Mickie all the cash they had. According to Firestone's deposition testimony, L.C. and Mickie did not believe that Firestone, Amberson, and Coleman had given them all the crystal methamphetamine and cash in their possession. L.C. and Mickie then doused the hunting cabin and Firestone, Amberson, and Coleman with kerosene and set the hunting cabin, with Firestone, Amberson, and Coleman restrained inside, on fire. Firestone, Amberson, and Coleman suffered substantial injuries as a result of being burned in the fire; Amberson and Coleman eventually died from their injuries. Tooley, L.C., and Mickie were eventually charged with various crimes arising out of the events described in Firestone's deposition testimony; all three men ultimately pleaded guilty to the charges in 2010.
On February 23, 2000, D.B. Matson, a deputy state fire marshal employed by the Alabama Department of Insurance, created a report concerning the incident. Matson's report states that, on June 10, 1996, Christi Coleman Hicks, who was married to Coleman at the time of the incident, informed an Alabama Bureau of Investigation ("ABI") agent investigating the case that "she heard that L.C...., Stanley Tooley, and ... Tooley did the burning in Coosa County." Matson's report further indicates that Tooley told another individual "that he and his brother [Stanley] did the crime." Matson's report states that "Tooley was picked up by an undercover police officer ... and questioned about this incident."
Firestone's deposition testimony indicates that, in 2007, Firestone's son told Firestone that he had heard rumors that in 1995 Tooley had stolen the same amount *592 of crystal methamphetamine that had been stolen from the hunting cabin on May 16, 1995. Firestone informed the ABI officers investigating the case what Firestone's son had told him concerning Tooley. Firestone's deposition testimony indicates that the ABI officers told him that they were going to investigate the information Firestone's son had heard concerning Tooley.
Affidavit testimony of Eddie Whorton, Betty Cheney, Brian Farley, and Christi Coleman Hicks was presented by Weaver. Whorton's affidavit testimony states that he "was an acquaintance of ... Amberson and ... Firestone" and that,
"in 1995, approximately five months after the incident [at the hunting cabin] which resulted in the deaths of ... Amberson and ... Coleman and injury to ... Firestone, I obtained information from a female friend that ... Tooley was one of the individuals that perpet[r]ated the deaths and injuries. I obtained pictures of ... Tooley taken at a wedding from this friend and took them to ... Firestone. I showed the pictures of ... Tooley to [Firestone] and he identified him as one of the assailants. I then contacted Roy Harbin, who was a local law enforcement officer and provided him with the information. I have knowledge that Roy Harbin talked to [Firestone] after this and even put ... Tooley in a line-up for ... Firestone."
In his deposition testimony, Firestone confirmed that in 1995 Whorton had shown him a picture of Tooley and that Whorton told Firestone that Tooley "knew something about" the incident. Firestone also confirmed in his deposition testimony that he had met with Roy Harbin and that Harbin had Firestone look at Tooley in a room to determine if Tooley was one of Firestone's assailants.
Cheney's affidavit states that she was married to Firestone at the time of the incident but that they divorced in 1998. Cheney's affidavit further states:
"3. Sometime between 1995 to 1996, ... Firestone was called in for a meeting with Roy Harbin for the purpose of attempting to identify ... Tooley from a lineup. Roy Harbin specifically questioned ... Firestone about ... Tooley's involvement. After the meeting, ... Firestone explained that he was not able to identify [Tooley]. In response, [Firestone] explained to me that Roy Harbin responded that ... Tooley was the guy who did it and he just let him go.
"4. In late 1997 to spring 1998, I received a telephone call from a Kristy Hollingsworth. During this call, Ms. Holling[s]worth informed me that she knew what happened to [Firestone] in Coosa County. She gave me specific names of people that she claimed to be involved, including ... Tooley ..., L.C...., [and] Mickie .... The caller told me that it was ... Tooley who did it. ... She also said that ... Weaver was involved. ... I made contemporaneous hand-written notes of this phone conversation.
"5. At a later date, I passed along my notes to ... Firestone in anticipation of one of his meetings with the ABI investigators."
Farley's affidavit states that he "was a close friend" of Coleman's and that he knew Firestone. Farley's affidavit states that he "had heard information that the perpetrators of this incident were Mickie ..., ... Tooley and L.C." Farley's affidavit further states that in 1995 he informed an ABI investigator of the information he had received concerning Tooley's, L.C.'s, and Mickie's involvement in the incident. According to his affidavit testimony, Farley also informed Firestone while Firestone was in the hospital recovering from the injuries he suffered in the fire of the *593 information he had received concerning Tooley's, L.C.'s, and Mickie's involvement in the incident.
Hicks's affidavit indicates that Farley also told her of the information he had received concerning Tooley's, L.C.'s, and Mickie's involvement in the incident. Hicks's affidavit does not indicate that she passed this information along to Firestone.
In August 2010, Tooley, L.C., and Mickie pleaded guilty to the attempted murder of Firestone. On August 20, 2010, Firestone filed a complaint against the defendants and several fictitiously named parties, seeking damages on claims of conspiracy, the tort of outrage, assault and battery, and attempted murder. Although Weaver was not present at the hunting cabin, Firestone alleged that he organized and funded the incident. Recognizing that a question might exist as to whether his action was barred by the applicable statutes of limitations, Firestone averred in his complaint:
"On August 9, 2010, Tooley, [Mickie], and [L.C.] pleaded guilty to attempted murder of [Firestone]. It was not until this date that [Firestone] discovered the identity of the [individuals] who had attacked him because of the fraudulent concealment of the conspiracy and the identity of the conspirators. [Firestone] avers that despite diligent efforts, he could not discover the identity of his attackers before August 9, 2010. [Firestone] has since August 9, 2010, further discovered the identity of Defendant [Carl] Weaver and his role in this matter. [Firestone] avers that none of the acts of [the defendants] are barred by the statute of limitations. [Firestone] avers that this action is brought against [these individuals] within the time allowed by Alabama law for bringing an action following discovery of facts which have been fraudulently concealed by defendants. [Firestone] further avers that any otherwise applicable statute of limitations has been equitably tolled until the reasonable efforts of [Firestone] to discover the identity of [these individuals] and that [Firestone] has brought this action in the time allowed by law following such discovery. [Firestone] further avers that no statute of limitations is applicable to this case under Alabama law because it is an action for damages for maiming and attempted murder with the relevant facts of the identity of [the defendants] deliberately concealed as a part of a conspiracy by [the defendants] to maim and murder [Firestone] and others."
On September 24, 2010, Weaver filed a motion to dismiss Firestone's complaint. On July 21, 2011, the circuit court denied Weaver's motion to dismiss. On the same day, the circuit court entered an order concerning Tooley and L.C., which stated: "[H]aving been served with process in this action, and the time for answering having passed, this action will be dismissed as to [Tooley and L.C.] unless [Firestone] shall, within 21 days, initiate default." The circuit court also entered a separate order noting that Mickie had died and dismissing him from the lawsuit; no motion requesting that a representative of Mickie's estate be substituted as a party had been filed at that time.
On August 4, 2011, Firestone filed applications for default judgments against Tooley and L.C. On August 10, 2011, the circuit court entered an "order entering default," which states: "Default is hereby entered against defendants L.C. ... and ... Tooley. [Firestone] may submit a proposed order for consideration." The circuit court's August 10, 2011, order did not assess damages against Tooley or L.C. and specifically requested that Firestone submit a proposed order doing so.
*594 After the circuit court denied Weaver's motion to dismiss, Weaver filed a motion for a permissive appeal pursuant to Rule 5, Ala. R. App. P. This Court granted Weaver permission to appeal the circuit court's denial of his motion to dismiss. Weaver v. Firestone, 155 So.3d 952, 954 (Ala. 2013) (" Weaver I"). In Weaver I, we stated the following concerning Weaver's motion to dismiss:
"Weaver filed a motion to dismiss Firestone's complaint pursuant to Rule 12(b)(6), Ala. R. Civ. P., and §§ 6-2-34 and 6-2-38, Ala. Code 1975.[2] In his motion, Weaver argued that Firestone's claims were barred by the applicable statutes of limitations and that no tolling provision precluded the application of the time-bars. Specifically, Weaver argued that neither the discovery rule of § 6-2-3, Ala. Code 1975, nor the doctrine of equitable tolling was applicable to Firestone's claims.
"After conducting a hearing on Weaver's motion to dismiss, the trial court denied the motion. The trial court specifically noted that Firestone 'alleges in the complaint that he made diligent efforts to discover the identity of his assailants, but could not do so until they pleaded guilty and implicated Weaver.' "
155 So.3d at 956.
On appeal, this Court determined that Firestone had "alleged facts that would support the conclusion that equitable tolling is applicable in the present case." 155 So.3d at 968. Accordingly, this Court affirmed the circuit court's denial of Weaver's motion to dismiss, and the case proceeded in the circuit court.
On February 5, 2015, Weaver filed a motion for a summary judgment. Weaver argued, as he did in his motion to dismiss, that Firestone's claims against him were barred by §§ 6-2-34 and 6-2-38(l ), Ala. Code 1975. Weaver also argued in his summary-judgment motion that neither the discovery rule of § 6-2-3, Ala. Code 1975, nor the doctrine of equitable tolling applied to save Firestone's claims from the bar of the applicable statutes of limitations. Weaver argued that, even if the doctrine of equitable tolling applied, the statutes of limitations should have begun running when Firestone met with Harbin for the purpose of identifying Tooley as one of Firestone's assailants, i.e., in 1995 or 1996, or at the latest in 2007-when Firestone received information from his son indicating that Tooley had been involved in the theft of the crystal methamphetamine from the hunting cabin and possibly in the assault and battery of Firestone.
On May 19, 2015, the circuit court denied Weaver's summary-judgment motion. The circuit court determined that Firestone "was presented with evidence as would place a reasonable person on notice that Tooley was one of those who committed the assault on Firestone." Specifically, the circuit court determined that the information Firestone received from his son concerning Tooley's involvement "would place a reasonable person on notice as of 2007 (the year in which Firestone's son presented him with the ... information regarding Tooley)." The circuit court further stated:
"[T]his court determines that a reasonable person in the exercise of due diligence would have followed up on *595 Firestone's son's 2007 information in an effort to confirm its accuracy. There is no indication that Firestone took any ... action other than to report this information to the Alabama Bureau of Investigation."
Accordingly, the circuit court held that the six-year statute of limitations set forth in § 6-2-34, which the circuit court determined applied to all of Firestone's claims against Weaver, began to run on an unspecified day in 2007. The circuit court concluded that Firestone's claims against Weaver were thus not barred by the applicable statute of limitations because Firestone filed his action against Weaver within six years of 2007.
On June 5, 2015, Weaver filed a petition for a writ of mandamus with this Court challenging the denial of his summary-judgment motion. We denied Weaver's petition by order of the Court, without ordering answers and briefs. Ex parte Weaver (No. 1140946, July 13, 2015).
On April 5, 2016, after conducting further discovery, Weaver filed a second motion for a summary judgment. In support of his second summary-judgment motion, Weaver submitted, among other things, the affidavits of Whorton, Cheney, Farley, and Hicks summarized earlier in this opinion.
Weaver argued that the facts set forth in his evidentiary submissions were substantial evidence that Firestone had information in 1995 or 1996 that Tooley was involved in the incident at the hunting cabin. On May 16, 2016, Firestone filed a response to Weaver's summary-judgment motion.
On July 14, 2016, the circuit court granted Weaver's second summary-judgment motion. After summarizing the relevant evidence before it, the circuit court stated:
"This Court finds that the foregoing facts 1) would place a reasonable person on notice that at least one of the named Defendants in this action was one of those persons who had committed the assault which is the basis of this action, 2) were presented to [Firestone] no later than 1996, and 3) are uncontroverted.
"The previously tolled statute of limitations as to [Firestone's] claims against Defendants and fictitious parties, began to run no later than the end of 1996, expired no later than December 31, 2006, and [Firestone] did not file suit against any defendant until August 20, 2010.
"It is therefore considered and ordered as follows:
"1. [Weaver's] motion for summary judgment is granted and [Firestone's] claims against Defendant Carl Weaver [are] hereby dismissed with prejudice.
"2. This order granting summary judgment in favor of Defendant Weaver and against [Firestone] renders all other pending motions moot, and all previous orders setting motion hearings are hereby withdrawn.
"3. Defendant Weaver being the only represented Defendant in this action and the only Defendant to have filed any pleadings in this action, therefore, pursuant to authority of Rule 54(b)[, Ala. R. Civ. P.], there being no just reason for delay, the Court directs the entry of the foregoing as a final judgment."
Firestone appealed.
Discussion
Although neither party has raised the issue of the appropriateness of the circuit court's Rule 54(b), Ala. R. Civ. P., certification of its July 14, 2016, summary-judgment order, this Court may consider that issue ex mero motu because the issue whether a judgment or order is sufficiently *596 final to support an appeal is a jurisdictional one. See, e.g., Robinson v. Computer Servicenters, Inc., 360 So.2d 299, 302 (Ala. 1978) (noting that "the trial court cannot confer appellate jurisdiction upon this court through directing entry of judgment under Rule 54(b) if the judgment is not otherwise 'final' ").
Rule 54(b) states, in pertinent part:
"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."
This Court has recently explained the standard for reviewing Rule 54(b) certifications:
" ' "If a trial court certifies a judgment as final pursuant to Rule 54(b), an appeal will generally lie from that judgment." Baugus v. City of Florence, 968 So.2d 529, 531 (Ala. 2007).
" 'Although the order made the basis of the Rule 54(b) certification disposes of the entire claim against [the defendant in this case], thus satisfying the requirements of Rule 54(b) dealing with eligibility for consideration as a final judgment, there remains the additional requirement that there be no just reason for delay. A trial court's conclusion to that effect is subject to review by this Court to determine whether the trial court exceeded its discretion in so concluding.'
" Centennial Assocs. v. Guthrie, 20 So.3d 1277, 1279 (Ala. 2009). Reviewing the trial court's finding in Schlarb v. Lee, 955 So.2d 418, 419-20 (Ala. 2006), that there was no just reason for delay, this Court explained that certifications under Rule 54(b) are disfavored:
" 'This Court looks with some disfavor upon certifications under Rule 54(b).
" ' "It bears repeating, here, that ' "[c]ertifications under Rule 54(b) should be entered only in exceptional cases and should not be entered routinely." ' State v. Lawhorn, 830 So.2d 720, 725 (Ala. 2002) (quoting Baker v. Bennett, 644 So.2d 901, 903 (Ala. 1994), citing in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373 (Ala. 1987) ). ' " 'Appellate review in a piecemeal fashion is not favored.' " ' Goldome Credit Corp. [v. Player, 869 So.2d 1146, 1148 (Ala. Civ. App. 2003) ] (quoting Harper Sales Co. v. Brown, Stagner, Richardson, Inc., 742 So.2d 190, 192 (Ala. Civ. App. 1999), quoting in turn Brown v. Whitaker Contracting Corp., 681 So.2d 226, 229 (Ala. Civ. App. 1996) ) (emphasis [omitted] )."
" ' Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala. 2004).'
"In considering whether a trial court has exceeded its discretion in determining that there is no just reason for delay in entering a judgment, this Court has considered whether 'the issues in the claim being certified and a claim that will remain pending in the trial court " 'are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.' " ' Schlarb, 955 So.2d at 419-20 (quoting Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp., 834 So.2d 88, 95 (Ala. 2002), quoting in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala. 1987), and concluding that conversion and fraud claims were too intertwined with a pending breach-of-contract *597 claim for Rule 54(b) certification when the propositions on which the appellant relied to support the claims were identical). See also Centennial Assocs., 20 So.3d at 1281 (concluding that claims against an attorney certified as final under Rule 54(b) were too closely intertwined with pending claims against other defendants when the pending claims required 'resolution of the same issue' as issue pending on appeal); and Howard v. Allstate Ins. Co., 9 So.3d 1213, 1215 (Ala. 2008) (concluding that the judgments on the claims against certain of the defendants had been improperly certified as final under Rule 54(b) because the pending claims against the remaining defendants depended upon the resolution of common issues)."
Lighting Fair, Inc. v. Rosenberg, 63 So.3d 1256, 1263-64 (Ala. 2010).
Firestone asserted his four claims (conspiracy, tort of outrage, assault and battery, and attempted murder) against each of the defendants and claimed that the defendants were "separately and severally" liable for the entirety of his damages. Firestone's claims against all the defendants arise out of the same set of facts. Although Tooley and L.C. have not filed a pleading in response to Firestone's complaint, any appeal they may file in the future from a judgment against them in this case would concern the same facts that are the basis of Firestone's claims against Weaver.
This Court stated in Smith v. Slack Alost Development Services of Alabama, LLC, 32 So.3d 556, 562-63 (Ala. 2009) :
"In Centennial Associates, Ltd.[ v. Guthrie, 20 So.3d 1277 (Ala. 2009) ], we stated that ' "[i]t is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be required to consider again when another appeal is brought after the [trial] court renders its decision on the remaining claims or as to the remaining parties." ' 20 So.3d at 1281 (quoting 10 Charles Alan Wright et al., Federal Practice and Procedure § 2659 (1998) ). Repeated appellate review of the same underlying facts would be a probability in this case, and, in light of this Court's stated policy disfavoring appellate review in a piecemeal fashion, see Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala. 2004), we accordingly hold that the trial court exceeded its discretion in certifying the judgment entered against [one of the defendants] as final pursuant to Rule 54(b)."
In the present case, there is a probability of "[r]epeated appellate review of the same underlying facts." Smith, 32 So.3d at 562. It appears that the circuit court may yet enter a final default judgment against Tooley and L.C.[3] Tooley and L.C. will then have an opportunity to appeal.
*598 Firestone's claims against them "are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results." Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala. 1987). We conclude that the piecemeal adjudication of the claims against the defendants poses an unreasonable risk of inconsistent results.
Further, we are not ignorant of the fact that, until the claims against Tooley and L.C. are finally adjudicated, there remains the possibility that they may file a responsive pleading raising the affirmative defense of the statute of limitations.[4] Assuming they do so, the facts regarding when Firestone's claims against Weaver accrued, when the applicable statute of limitations pertaining to Firestone's claims against Weaver began to run, and if the applicable statute of limitations pertaining to Firestone's claims against Weaver were tolled would also be relevant to any statute-of-limitations *599 defense asserted by Tooley and/or L.C.
The issue whether Firestone's claims against Weaver are barred by the applicable statutes of limitations-which is the issue raised in this Court-is the same issue that could be raised in the circuit court by Tooley and/or L.C., if the circuit court were to set aside its entry of default and they were to file a responsive pleading asserting the affirmative defense of the statute of limitations. In such an event, "the issues in the claim being certified and a claim that will remain pending in the trial court ' "are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results." ' " Schlarb v. Lee, 955 So.2d 418, 419-20 (Ala. 2006) (quoting Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp., 834 So.2d 88, 95 (Ala. 2002), quoting in turn Branch, 514 So.2d at 1374 ).
Conclusion
Based on the foregoing, we conclude that the circuit court exceeded is discretion in certifying the summary judgment in favor of Weaver as final. Because "[a] nonfinal judgment will not support an appeal," Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala. 2004), Firestone's appeal must be dismissed.
APPLICATION OVERRULED; OPINION OF MAY 12, 2017, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED.
Stuart, C.J., and Bolin, Shaw, Wise, and Sellers, JJ., concur.

As explained in greater detail below, this is not the first time these parties have appeared before this Court. See Weaver v. Firestone, 155 So.3d 952 (Ala. 2013), and Ex parte Weaver (No. 1140946, July 13, 2015).

Section 6-2-34, Ala. Code 1975, requires that an action "for any trespass to person or liberty, such as ... assault and battery," be commenced within six years. Section 6-2-38(l ), Ala. Code 1975, requires that "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

The circuit court's August 10, 2011, order finding Tooley and L.C. in default for failing to file a responsive pleading is not a final judgment, but an " 'interlocutory default judgment.' " Ex parte Family Dollar Stores of Alabama, Inc., 906 So.2d 892, 896 (Ala. 2005) (quoting Ex parte Keith, 771 So.2d 1018, 1019 (Ala. 1998) ). In Ex parte Family Dollar, this Court provided the following explanation of the application of Rule 55, Ala. R. Civ. P., in such situations:
"Rule 55, Ala. R. Civ. P., 'Default,' provides, in pertinent part, as follows:
" '(a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.
" '(b) Judgment. Judgment by default may be entered as follows:
" '(1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and if the defendant is not a minor or incompetent person.
" '(2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor ... If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury pursuant to the provisions of Rule 38.
" '(c) Setting Aside Default. In its discretion, the court may set aside an entry of default at any time before judgment. The court may on its own motion set aside a judgment by default within thirty (30) days after the entry of the judgment. The court may also set aside a judgment by default on the motion of a party filed not later than thirty (30) days after the entry of the judgment.'
"Thus, Rule 55 envisions a two-step process pursuant to which the clerk of the court first enters the party's default and a 'judgment by default' is then entered, either by the clerk or the court, depending upon the nature of the claim. Pursuant to subsection (c), the court may set aside 'an entry of default' at any time, in its discretion, before a judgment by default is entered and may also set aside, under the time limitations specified in that subsection, the 'judgment by default.' Accordingly, it is probably helpful to talk in terms of an entry of 'default' and an entry of a 'judgment by default,' respectively, to differentiate between the two events. Rule 55(b)(2) provides that where a default has been entered, but 'in order to enable the court to enter judgment ..., it is necessary to ... determine the amount of damages ... the court may conduct such hearings ... as it deems necessary and proper....' This Court has referred to the interim 'judgment' entered in such a situation as 'an interlocutory default judgment.' Ex parte Keith, 771 So.2d 1018, 1019 (Ala. 1998). 'A judgment by default with leave to prove damages is interlocutory and can be set aside at any time until entry of judgment on assessment of damages. It then becomes a final judgment.' Maddox v. Hunt, 281 Ala. 335, 339, 202 So.2d 543, 545 (1967). 'A default judgment that reserves the assessment of damages is interlocutory and may be set aside at any time; once the trial court assesses damages on the default judgment, the judgment becomes final. Rule 55(c), Ala. R. Civ. P.; Maddox v. Hunt, 281 Ala. 335, 202 So.2d 543 (1967).' Keith v. Moone, 771 So.2d 1014, 1017 (Ala. Civ. App. 1997), rev'd on other grounds, Ex parte Keith, [ 771 So.2d 1018 (Ala. 1998) ]."
906 So.2d at 896 (emphasis added).
Until the circuit court enters a judgment assessing damages against Tooley and L.C., the circuit court may set aside its "interlocutory default judgment" at any time and allow Tooley and L.C. to litigate the claims against them.

As noted in footnote 3, it is within the circuit court's discretion to set aside its "interlocutory default judgment" any time before it enters a final judgment of default.